UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

AMY KATHERINE KLAAS,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

Case No.: 22CV00460-L(BLM)

**REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**[ECF Nos. 16 and 17]**

Plaintiff Amy Catherine Klaas brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of her claim for disability and disability insurance benefits. ECF Nos. 1 and 16. Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 16 ("Pl.'s Mot.")], Defendant's Cross-Motion and Response in Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 17 ("Def.'s Mot.")], and Plaintiff's opposition and reply [ECF Nos. 18 ("Pl.'s Reply")].

This Report and Recommendation is submitted to United States District Judge M. James Lorenz pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's

Cross-Motion for Summary Judgment be **GRANTED**.

## PROCEDURAL BACKGROUND

On June 30, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on February 27, 2020.  See Administrative Record ("AR") at 33.  The claims were denied initially on August 27, 2020, and upon reconsideration on November 4, 2020, resulting in Plaintiff's request for an administrative hearing on November 30, 2020.  Id.

On May 11, 2021, a hearing was held before Administrative Law Judge ("ALJ") Howard K. Treblin.  Id. at 33, 54-73.  In a written decision dated November 30, 2021, ALJ Treblin determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act.  Id. at 30-49.  On December 21, 2021, Plaintiff requested review by the Appeals Council.  Id.  In a letter dated March 22, 2022, the Appeals Council found no basis for reviewing the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  Id. at 8-10.

On April 6, 2022, Plaintiff filed the instant action seeking judicial review by the federal district court.  See ECF No. 1.  On October 11, 2022, Plaintiff filed a motion for summary judgment alleging that the ALJ "failed to articulate legally sufficient reasons for rejecting the opinions of Drs. Bradshaw and Hall."  Pl.'s Mot. at 8.  Defendant filed a timely opposition asserting that the "ALJ 's evaluation of medical opinions and prior administrative medical findings was supported by substantial evidence."  Def.'s Mot. at 13.  Plaintiff replied on November 15, 2022 reiterating her argument that the ALJ's opinion is not supported by "substantial evidence because he failed to adequately explain why he rejected the opinions of Drs. Bradshaw and Hall."  Pl.'s Reply.

## ALJ's DECISION

On November 30, 2021, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act.  AR at 33-49.  Initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period since February 27, 2020, the alleged onset date.  Id. at 36.  At step two, the ALJ

determined that Plaintiff's impairments were non-severe, as her conditions were medically managed and no aggressive treatment was recommended. Id. at 37. At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments. Id. at 38. In reaching this decision, the ALJ noted that: "[b]ecause the claimant's mental impairments do not cause at least two "marked" limitations or an "extreme" limitation, the "paragraph B" criteria are not satisfied." Id. at 39.

At step four, the ALJ considered Plaintiff's impairments and determined that her residual functional capacity ("RFC") permitted her "to perform a full range of work at all exertional levels" but with the following non-exertional limitations:

> she can understand, remember, and carry out simple, routine tasks or job instructions in a low stress work setting involving few workplace changes; she can never perform rapid pace assembly line work; she can tolerate incidental superficial contact with the public; she can tolerate occasional interaction with supervisors and coworkers, but should not have collaborative or teamwork type settings; she can respond appropriately to routine work situations and settings; she can respond appropriately to changes in a routine work situations and settings; and she can appropriately ask questions and use judgment.

Id. at 39-40. The ALJ also determined that Plaintiff is unable to perform any past relevant work, but that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Id. at 48. In reaching this decision, the ALJ found that state agency psychological consultants, Drs. Amado and Haroun, were persuasive because their opinions "are supported by the objective evidence" and consistent with the findings of Plaintiff's treating psychologist, Dr. Gabriel. Id. at 45. The ALJ found the opinions of Drs. Bradshaw and Hall to be unpersuasive because they were not supported by objective medical evidence and were dated before Plaintiff's alleged disability onset date. Id. at 45-46.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is

limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Miner v. Berryhill, 722 Fed. Appx. 632, 633 (9th Cir. 2018) (We review the district court's decision de novo, disturbing the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence.") (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) (quoting Molina v. Astrue, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by regulation on other grounds*. It is relevant evidence that a reasonable person might accept as adequate to support a conclusion after considering the entire record. Id. See also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019). "In determining whether the Commissioner's findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Laursen v. Barnhart, 127 Fed. Appx. 311, 312 (9th Cir. 2005) (quoting Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. See Ahearn, 988 F.3d at 1115-1116 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Ahearn, 988 F.3d at 1115 ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Miner, 722 Fed. Appx. at 633. Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court also may remand the matter to the Social Security Administration for further proceedings. Id.

**DISCUSSION**

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Bradshaw and Hall, did not "state reasons for rejecting medical opinions about [Plaintiff's] ability to engage in work and work-like functions," and "failed to recognize the waxing and waning nature" of Plaintiff's mental impairments. Pl.'s Mot. at 8-9.

Defendant contends that the ALJ "properly considered the prior administrative medical findings and medical opinions in the record assessing Plaintiff's RFC." Def.'s Mot. at 10. Specifically, Defendant contends that the findings of Drs. Amado and Haroun regarding Plaintiff's mental impairments did not preclude Plaintiff from all work, and were consistent with Plaintiff's reported activities. Id. at 12. Moreover, Defendant contends that Dr. Bradshaw's opinion was inconsistent with Plaintiff's treating physician, Dr. Gabriel's, mental status findings and with Plaintiff's reported activities. Id. at 13. Defendant also notes that Dr. Bradshaw's opinion was dated December 2019, and that the ALJ is not required to discuss evidence concerning a claimant's symptoms outside of the alleged disability period. Id. Finally, Defendant contends that "Dr. Hall's opinion that Plaintiff was unable to work was an issue reserved to the Commissioner that requires consideration of not only medical factors, but also vocational factors to which Dr. Hall had not been established to be an expert." Id. at 14.

Plaintiff replies that Defendant has failed to demonstrate that the ALJ's decision is supported by substantial evidence and should be rejected. Pl.'s Reply at 3. Plaintiff notes that the ALJ focuses on the differences in opinion between Drs. Bradshaw and Hall compared to Drs. Amado and Haroun. Id. at 4. Plaintiff argues that "[t]he mere difference of opinion with nothing more, does not constitute substantial evidence which justifies rejection of the opinions of Drs. Bradshaw and Hall." Id. Plaintiff asserts that the ALJ's explanation falls short in explaining the substantial evidence supporting his decision. Id. Plaintiff further argues that the ALJ erred because he "did not articulate what objective factors would have provided sufficient support for the mental limitations expressed by Drs. Bradshaw and Hall." Id. at 5.

///

///

**A. Mental Health Assessments**

1. Dr. Hall

On September 19, 2019, Dr. Pamela Hall, a consultative psychologist through the Department of Veterans Affairs (VA), completed a Mental Disorders (Other than PTSD and Eating Disorders) Disability Benefits Questionnaire in connection with Plaintiff's Veteran's Administration disability claim that lists a "total occupational and social impairment" for Plaintiff. Id. at 832. Dr. Hall stated that Plaintiff was diagnosed with a mental disorder of major depressive disorder, "chronic, severe without psychotic features." Id. at 831. Dr. Hall did not add any additional comments or information to the diagnosis portion of the questionnaire discussing Plaintiff's occupational and social impairment designation. Id. at 832.

2. Dr. Bradshaw

The medical records show that Dr. Jean Bradshaw, a psychologist, treated Plaintiff for at least a year beginning in April 2019 through April 2020, with only two of the appointments occurring after the alleged onset date of Plaintiff's disability.[1] Id. at 520-524, 571. Dr. Bradshaw's treatment notes from this time period generally show that Plaintiff was depressed, anxious, and tearful with lessened awareness and memory deficiencies, partially compliant with treatment, and not at risk of suicide or violence. Id. at 527, 534, 535, 538, 546, 551, 554, 559, and 562-565.

In December 2019, Dr. Bradshaw completed a mental residual functional capacity questionnaire which states that Plaintiff is "seriously limited but not precluded" from asking simple questions or requesting assistance, being aware of normal hazards and taking appropriate precautions, or traveling in unfamiliar places. Id. at 573-575. Question number eight on the

[1] The AR contains appointment notes from April 22 and 29, 2019, May 8, 20, and 29, 2019, June 3, 17, and 24, 2019, July 6, 10, 21, and 29, 2019, August 5, 12, and 28, 2019, September 4, 9, 16, 23, and 30, 2019, October 7, 8, 10, 15, and 21, 2019, November 11, 18, and 25, and 2019, December 2, 9, 16, 22, and 23, 2019, January 13 and 27, 2020, February 12, 2020, and April 2, and 13, 2020. AR at 504, 509, 520-524, 527, 532, 534-535, 538, 542, 546, 549, 551, 554, 557, 559, and 562-565.

questionnaire listed several different "Mental Abilities and Aptitudes Needed to Do Unskilled Work" and required Dr. Bradshaw to check a box next to each ability or aptitude describing Plaintiff's ability to complete the ability or aptitude as "unlimited or very good," "limited but satisfactory," "seriously limited but not precluded," "unable to meet competitive standards," or "no useful ability to function."  Id. at 573.  Dr. Bradshaw's responses were as follows, Plaintiff is unable to meet competitive standards[2] for remembering work-like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, working in coordination with or proximity to others without being unduly distracted, making simple work-related decisions, understanding and remembering detailed instructions, setting realistic goals or making plans independently of others, interacting appropriately with the general public, and adhering to basic standards of neatness and cleanliness, and Plaintiff has no useful ability to function[3] in maintaining attention for a two-hour segment, maintaining regular attendance and being punctual within customary, usually strict tolerances, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruptions from psychologically based symptoms, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, dealing with normal work stress, carrying out detailed instructions, dealing with stress of semiskilled and skilled work, and maintaining socially appropriate behavior.  Id.

In explaining Plaintiff's limitations, Dr. Bradshaw noted that Plaintiff "lacks basic confidence/ability to try new tasks, and frequently has poor hygiene. . . frequently goes to flight

---

[2] "Unable to meet competitive standards means your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting."  AR at 573.

[3] "No useful ability to function, an extreme limitation, means your patient cannot perform this activity in a regular work setting." AR at 573.

or freeze state of mind with people familiar to her, much less others." Id. at 574. Dr. Bradshaw explained that Plaintiff "is burdened by major depression; has a standard vocabulary and used to work in the past" and that Plaintiff would have difficulty working at a regular job due to Plaintiff's "frequent crying jags and need to flee the environment when faced with stress." Id. at 574-575.

3. Dr. Tyler Gabriel

Plaintiff was treated by psychologist Tyler Gabriel, Ph.D. from October 2020 to May 2021. Id. at 641, 649, 660, 663, 668, 670, 674, 679, 690, 709, 715, 729. During her sessions with Dr. Gabriel, Plaintiff often reported being depressed, feeling lonely, failing at relationships, feeling stressed, easily overwhelmed, disappointed with her life, worried about social security, and unmotivated. Id. at 63, 679, 690-691, 694, 709, 720, 729. Generally speaking, the Mental Status Exams Dr. Gabriel conducted found Plaintiff to be alert, cooperative and friendly, depressed, and anxious, but speaking in a volume, tone and rate that was within normal limits. Id. at 646-647, 650, 661, 664, 669-670, 679, 690-691, 709, 716, 730. Plaintiff's overall affect was broad, congruent with mood and she had normal attention and concentration. Id. at 642, 646-647, 650, 661, 664, 674-675, 670, 690-691, 694, 709, 710, 730. Her thought process was normal, linear, and goal oriented. Id. at 716, 720, 730. She had normal eye contact and psychomotor and exhibited good judgment and insight with a memory that appeared grossly intact. Id. at 642, 646-647, 650, 663, 674-675, 679, 690-691, 694, 709-710, 720, 730. Throughout her sessions with Dr. Gabriel, Plaintiff discussed goals, activities, and achievements like knitting and working out on the step machine every other day for thirty minutes [see id. at 709], volunteering at the VA or a pet shelter, training to be a CASA for kids, and getting a class B driver's license once COVID restrictions were over, increasing her walking, and drinking less Coke [see id. at 679], starting Weight Watchers with her mother [see id. at 674-675], volunteering, getting her nails done, and attending in person Al-Anon meetings [see id. at 660], developing new friendships, getting an RV, and traveling after COVID [see id. at 649], and stepping for at least an hour a day [id. at 642].

///

4. Dr. Amado

On August 25, 2020, Dr. Amado, a state agency psychologist, reviewed Plaintiff's medical records and opined that Plaintiff has moderate limitations in all paragraph B criteria - her ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself - but that the medical record showed Plaintiff's activities did not support a determination of disability. AR at 97-98. Dr. Amado noted that while Plaintiff continued to "struggle[] with unstable moods, [her] condition appears clinically stable with treatment and [she] remains independent in her daily adaptive skills even though she resided with her parents and assists them with chores and meal preparation." Id.

5. Dr. Haroun

On November 4, 2020, Dr. N. Haroun, a state agency psychologist, reviewed Plaintiff's medical records and concluded that Plaintiff is not significantly limited in her ability to (1) remember locations and work-like procedures, (2) understand and remember very short and simple instructions, (3) carry out very short and simple instructions, (4) ask simple questions or request assistance, (5) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, (6) be aware of normal hazards and take appropriate precautions, (7) travel in unfamiliar places or use public transportation, and (8) make simple work-related decisions. AR at 117-119. Dr. Haroun also found that Plaintiff is moderately limited in her ability to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) sustain an ordinary routine without special supervision, (6) work in coordination with or in proximity to others without being distracted by them, (7) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, (8) interact appropriately with the general public, (9) accept instructions and respond appropriately to criticism from supervisors, (10) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, (11) respond appropriately to changes in the work setting, and (12) set realistic goals or make plans

independently of others. Id. Dr. Haroun concluded that Plaintiff is "able to implement at least simple instructions on a consistent basis despite intrusive psychiatric symptoms." Id. at 119. Further, Dr. Haroun opined that Plaintiff

> can understand, remember, and carry out simple, routine tasks in a routine, low stress work setting involving few workplace changes; she can never perform rapid pace assembly line work; she can tolerate no interaction with the public, but she can tolerate incidental superficial contact with the public; she can tolerate occasional interaction with supervisors; and she can tolerate occasional interaction with co-workers, but not in a cooperative or team effort.

Id. at 121. Dr. Haroun determined that Plaintiff is not disabled. Id. 122-123.

6. Amanda Ortiz, Ph. D

From the Court's review of the record, Amanda Ortiz, a psychology fellow, conducted an intake interview of Plaintiff on May 14, 2020 under the supervision of Pollyanna Casmar, Ph.D., the attending doctor of record, but did not continue to treat her after the initial interview. Id. at 444, 806-814. Dr. Ortiz performed a Mental Status Examination and noted that Plaintiff was casually dressed, appeared her age, was appropriately groomed, and had fleeting eye contact. Id. at 814. Plaintiff was also calm, cooperative, and pleasant and spoke in a normal rate and rhythm. Id. She was anxious and had a labile affect. Id. Plaintiff's thought form was logical and goal-directed and there was no flight of ideas. Id. There was circumstantiality and she evidenced tangentially when discussing interpersonal relationships and stressors. Id. Plaintiff did not suffer from delusions or hallucinations and did not respond to internal stimuli. Id. She denied suicidal and homicidal ideations. Id. She was oriented and her judgment was fair and intact. Id. Dr. Ortiz' diagnostic impression was that Plaintiff suffered from Major Depressive Disorder, recurrent, moderate and emotion dysregulation, R/O Borderline Personality Disorder. Id. Dr. Ortiz did not opine on Plaintiff's capabilities or limitations. Id.

7. Leslie Powell, MSN

The medical records in the AR show that Leslie Powell, MSN treated Plaintiff for a little

less than a year, from May 21, 2020 – March 9, 2021.[4] During her sessions with Nurse Powell, Plaintiff often described feeling depressed and lonely, crying a lot, feeling frustrated and irritated or angry and unmotivated, worrying about her parents' health and social security, and having sleep issues. Id. at 681-682, 704, 721-722, 737, 755, 770, 780, 790-791, and 797. Plaintiff also reported that she was rarely bored and spent her time knitting, making meals for her parents, watching television, walking the dog with her mom, attending group therapy, attending online Al-Anon meetings, and grocery shopping. Id. at 704, 737, 755, 780. Plaintiff's Mental Status Examinations generally showed Plaintiff to be alert, oriented, and tearful at times, but engaged with good eye contact. Id. at 724, 739, 757, 782, 792, 801. Her psychomotor activity was typically mild PMA and she had a normal rate of speech, rhythm, and volume. Id. 654, 683, 724, 739, 757, 792, 797. There were no delusions, hallucinations, suicidal ideation, homicidal ideation, or intent to die. Id. at 654, 683, 706, 724, 739, 757, 772, 782, 792, 801. Plaintiff's cognition was grossly intact, her thought content varied between appropriate, depressive, and negative, and her thought process was usually circumstantial, coherent, goal-oriented, and/or linear. Id. Plaintiff's judgment was fair to good and her insight good. Id. Her mood was depressed and her affect congruent. Id. Nurse Powell did not opine on Plaintiff's abilities or limitations. Id.

**B. Relevant Law**

Changes to Social Security Administration regulations have shifted the hierarchical value of medical opinions in evaluating presumptive weight for a claimant. See Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022). Prior to changes in 2017, the opinion of a treating doctor generally was given more weight than opinions of doctors who do not treat the claimant. See Turner v. Comm'r. of Soc. Sec., 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)). Following the Administration's changes on March 27,

---

[4] The AR contains appointment notes from May 21, 2020, June 9, 2020, June 29, 2020, July 27, 2020, August 18, 2020, September 24, 2020, October 14, 2020, November 12, 2020, January 6, 2021, and March 9, 2021. AR at 322, 330, 339, 348, 390-392, 401, 411, 421, 432, 651-652, 681-683, 703-706, 721-724, 736-739, 755-757, 770-772, 780, 790-792, 796-801.

2017, the most important factors the agency considers when weighing medical opinions are "supportability and consistency." Woods, 32 F.4th at 791-792. "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant [ ] objective medical evidence. Consistency means the extent to which a medical opinion is consistent [ ] with the evidence from other medical sources and nonmedical sources in the claim." Id. (internal citations and quotations omitted). Under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence," meaning that the ALJ must articulate how persuasive they find all provided medical opinions and explain the supportability and consistency factors of those opinions. Id. at 792; see also P.H. v. Saul, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.") (citation omitted); and Carolyn M.D. v. Kijakazi, 2021 WL 6135322, at *5 (C.D. Cal. Dec. 28, 2021) ("As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence.")

## C. Analysis

### 1. Supportability and Consistency

Dr. Bradshaw found Plaintiff to have total occupational disability. AR 571-575. The ALJ concluded that the December 2019 opinion of Dr. Bradshaw [is] unpersuasive" because "it is not supported by the objective medical evidence," Dr. Bradshaw only had two visits with Plaintiff after the alleged onset date, Dr. Bradshaw's opinion is dated in December 2019, which is before the alleged onset date, and it is inconsistent with the mental status examination findings of Plaintiff. Id. at 45.

Dr. Hall found that Plaintiff has total occupational and social impairment. Id. at 832. The ALJ concluded that Dr. Hall's opinion was unpersuasive because it was not supported by objective medical evidence, the exhibit file contained no treatment notes from Dr. Hall, Dr. Hall's opinion is dated September 2019 which is before the alleged onset date, the opinion is

inconsistent with Dr. Gabriel's mental status examination findings of Plaintiff, and the specific conclusion that Plaintiff "was unable to work is an opinion on an issue reserved to the Commissioner that requires consideration of not only medical factors, but also vocational factors with respect to which this medical source has not been established to be an expert." Id. at 46.

In determining the persuasiveness of the opinions of Drs. Bradshaw and Hall, the ALJ considered the two most important factors: supportability and consistency. Id. at 45-46. The ALJ found that Dr. Bradshaw's findings were inconsistent with Drs. Gabriel, Amado, and Haroun's findings that Plaintiff has moderate limitations but the residual functional capacity to perform a full range of work under non-exertional limitations. Id. The ALJ found that Dr. Hall's findings were inconsistent with the mental status examinations conducted by Dr. Gabriel and affirmed by Drs. Amado and Haroun. Id. at 46. "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." § 404.1520c(c)(2). In support, the ALJ referenced Plaintiff's mental status examinations with Dr. Gabriel that found

> depressed and anxious mood; broad, mood congruent, and tearful affect; normal, linear, and goal oriented thought process; no abnormality of thought content; cooperative and friendly behavior; normal eye contact; normal attention and concentration; normal memory; and, good insight and judgment.

AR at 45. The ALJ noted that Drs. Amado and Haroun's findings were similar. Id. Because three of the five doctors at issue in this matter – Drs. Gabriel, Amado, and Haroun - were consistent in their mental status findings, the ALJ found that Dr. Bradshaw's contradictory finding, that Plaintiff was occupationally disabled, and Dr. Hall's finding that Plaintiff was unable to work, were inconsistent. Id. at 45-46. The ALJ noted that unlike the finding of Dr. Bradshaw, the findings of Drs. Amado and Haroun were persuasive because in addition to being consistent with the findings of Dr. Gabriel, they were consistent with Plaintiff's reported activities, including

> taking classes at school; [] attending AA online; [] sleeping good or okay with trazodone; [] getting groceries, doing laundry, living with her parents, making

> meals for them, knitting, watching TV, and occasionally walking the dog with her mom; [] spending time with her parents; [] generally staying busy, never bored,

Id. Plaintiff also had hopes to "volunteer at the VA or a pet shelter, train to be a CASA for kids, get a class B license and RV, spend summers in Santa Cruz, travel, and see figure skating." Id. The ALJ found that Plaintiff could "perform a full range of work at all exertional levels with various non-exertional limitations." Id. at 39. The opinions of Drs. Gabriel, Amado, and Haroun are substantial evidence in support of the ALJ's findings.

With respect to supportability, the ALJ found that Dr. Bradshaw's opinions were not supported by the objective medical evidence in the record and the ALJ noted that Dr. Hall reported that Plaintiff has total occupational and social impairment, but her opinion is not supported by the objective medical evidence in the record. Id. at 45-46. The more objective, relevant medical evidence and supporting explanations provided by a medical source to support a doctor's opinions, the more persuasive the medical opinions will be. See 20 C.F.R. § 404.1520c(c)(1). In support of his finding, the ALJ cited to the Mental Residual Functional Capacity Questionnaire completed by Dr. Bradshaw in December 2019. Id. (citing Exh. B4F). The questionnaire contains a checklist finding Plaintiff unable to meet competitive standards or having no useful ability to function in several categories regarding the mental abilities and aptitudes needed for unskilled work. Id. at 507. The questionnaire also contains notes such as Plaintiff "has difficulty concentrating" has frequent "crying spells and irritation[,]" "low energy[,]" and "lethargy" and will likely be absent from work more than four days a month. Id. at 508. However, apart from the results of the DMS-IV Multiaxial Evaluation finding Major Depressive Disorder, Recurrent and reference to an "[i]nformal MSE conducted w/ score = low[,]" the questionnaire does not contain any objective medical evidence supporting those conclusions. Id. at 505 - 509. In further support, the ALJ noted that Dr. Hall's file did not contain any treatment notes supporting her finding. Id. at 46 (citing Exhs. B8F and B9F (VA Mental Disorders (Other than PTSD and Eating Disorders) Disability Benefits Questionnaire containing an Occupational and Social Impairment section underneath the Diagnosis subheading with a checkmark next to "total occupational and social impairment and no treatment notes").

The ALJ also referenced the objective evidence he previously discussed which includes the mental status examination findings of Drs. Gabriel and Ortiz and MSN Powell. Id. at 41-45.

Finally, the ALJ noted that Dr. Hall's opinions were unpersuasive because her determination that Plaintiff was unable to work is one that is reserved for the Commissioner and requires an analysis of vocational factors as well as medical factors. Id. at 46. This is an appropriate factor for the ALJ to consider in finding Dr. Hall's opinion to be unpersuasive. See Irene C. v. Commissioner of Soc. Sec., 2023 WL 2090978, at *9 (E.D. Wash., Feb. 17, 2023) (finding the ALJ did not err where he discounted a nurse's opinion that plaintiff was unable to perform any type of work because "the ultimate issue of disability is reserved to the Commissioner" and the opinion did not provide any insight into any specific limitations) (citing 20 C.F.R. § 4.04.1527(d)) (noting that the ultimate issue of disability is reserved for the Commissioner, and opinions on that issue are not considered medical opinions, nor are they given any special significance).

2. Opinion Date Prior to Plaintiff's Alleged Onset Date

Another reason provided by the ALJ for discounting the opinions of Drs. Bradshaw and Hall was that Dr. Bradshaw's opinion is from December 2019 and Dr. Hall's opinion is from September 2019, both of which are before Plaintiff's alleged onset date of February 27, 2020. AR at 45-46; see also AR at 575, 836). Defendant contends that the ALJ properly found that the opinions of Drs. Bradshaw and Hall were unpersuasive in part, because they predated the alleged onset of Plaintiff's disability. Def's. Mot. at 13. Plaintiff does not address this argument in her motion or reply. Pl.'s Mot.; Pl.'s Reply. It is well-established that evidence and opinions falling outside of onset disability time frames do not qualify as significant nor probative evidence. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) ("[m]edical opinions that predate the alleged onset of disability are of limited relevance.); see also Burkett v. Berryhill, 732 F. App'x 547, 551 (9th Cir. 2018) ("An ALJ is not required to discuss evidence that is not significant or probative. Evidence concerning Burkett's symptoms and limitations outside the alleged period of disability does not qualify as significant or probative.") (citing Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)). Accordingly, the ALJ

appropriately considered the date of Drs. Hall and Bradshaw's opinions when evaluating the persuasiveness of those opinions.[5]

3. Conclusion

The Court finds that the ALJ properly evaluated the persuasiveness of the opinions of Drs. Bradshaw and Hall and that his findings are supported by substantial evidence. The ALJ concluded that the opinions were inconsistent with the findings of Dr. Gabriel which were consistent with the findings of Drs. Amado, and Haroun. The contradictory opinions of Drs. Gabriel, Amado, and Haroun constitute evidence in support of the ALJ's findings. Additionally, the ALJ found the opinions of Drs. Bradshaw and Hall to be inconsistent with Plaintiff's own description of her daily activities which is additional evidence in support of the ALJ's findings. The ALJ's conclusion that the opinions of Drs. Bradshaw and Hall were not supported by the objective medical evidence in the record or by their own objective evidence is also supported by substantial evidence including the mental status examinations conducted by Drs. Ortiz and Gabriel and Leslie Powell, MSN. Furthermore, the ALJ correctly notes that the opinions of Drs. Bradshaw and Hall were given prior to the alleged onset of Plaintiff's disability on February 27, 2020 and, are therefore, of limited relevance.

Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and that Defendant's Cross Motion for Summary Judgment be **GRANTED**.

## CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS DENYING** Plaintiff's Motion

---

[5] Defendant also notes that the ALJ considered and discounted Plaintiff's VA rating. Def.'s Mot. at 15 n.2. In reaching his decision, the ALJ noted Plaintiff's VA disability letters from September 2019 stating that Plaintiff "had a 100% service connection for major depressive disorder effective July 11, 2019." Id. at 46. This finding was continued in two additional VA letters from October and November 2019. Id. The ALJ found Plaintiff's VA disability rating "to be neither valuable nor persuasive." Id. (citing 20 CFR 404.1520b(c)) (applicable to claims filed after March 27, 2017 and stating that decisions by other governmental agencies and non-governmental entities constitutes evidence that is neither valuable nor persuasive). Defendant correctly notes that Plaintiff has not challenged the ALJ's finding with respect to her VA disability rating. Accordingly, the Court will not evaluate this issue.

for Summary Judgment and **GRANTING** Defendant's Cross-Motion for Summary Judgment.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **June 30, 2023**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 14, 2023**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: 6/16/2023

Hon. Barbara L. Major
United States Magistrate Judge